UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO: 0:18-cv-00102-HRW

MICHAEL ADAMS,                                                                                        PLAINTIFF,

v.                **MEMORANDUM OPINION AND ORDER**

JANA OSBORNE, *Individually and*
*in her Official Capacity as Assistant Principal,*
*Boyd County Middle School;*
KIMBERLY FITCH, *Individually*
*and in her Official Capacity as Principal,*
*Boyd County Middle School* ;
WILLIAM L. BOBLETT, JR., *Individually*
*and in his Official Capacity as Superintendent*
*Of Boyd County School District;*
BOYD COUNTY SCHOOL BOARD;
TIM WECHSLER, *Individually*
*and in his Official Capacity*
*as Deputy, Boyd County Sheriff's Department*;
SHERIFF BOBBY JACK WOODS, *Individually*
*and in his Official Capacity*
*as Sheriff, Boyd County Sheriff's Department;*
JUDGE EXECUTIVE STEVE TOWLER, *in his Official Capacity*
*as Boyd County Judge Executive*
and
BOYD COUNTY FISCAL COURT,                                     DEFENDANTS.

This matter is before the Court upon Defendants Boyd County Board of Education, Kimberly Fitch, individually and in her official capacity as Principal of Boyd County Middle School, and William L. Boblett, Jr., individually and in his official capacity as Superintendent of the Boyd County Board of Education's Motion for Summary Judgment [Docket No. 32] and Defendant Jana Osborne, individually and in her official capacity as Assistant Principal of Boyd

County Middle School's Motion for Summary Judgment [Docket No. 34]. The matter has been fully briefed by the parties [Docket Nos. 32-1, 34-1, 44, 50 and 51]. For the reasons stated herein, the Court finds that these Defendants are entitled to judgment as a matter of law.

## I.

This case arises from the arrest, trial and acquittal of Plaintiff Michael Adams for terroristic threatening in the second degree in violation of KRS 508.078.[1]

Adams' son, Gage, was in the seventh grade at Boyd County Middle School during the 2017-2018 school year. [Deposition of Michael Adams, Docket No. 32-5, pp. 8, 12]. Adams testified that very shortly after school began, Gage began experiencing bullying at school. *Id.* at pp. 98-99.

Sometime in late August 2017, Adams' wife, Rebecca, spoke with the Assistant Principal, Defendant Jana Osborne, briefly in the school parking lot, about the bullying. *Id.* at pp. 102-104.

Both Mr. and Mrs. Adams spoke to Osborne again in this regard in September 2017. *Id.* at p. 104. This conversation took place in a hallway at the school. *Id.* Adams testified that during this conversation, he stated that he would send Gage to school with a switchblade if the bullying

---

1 The statute provides:

> (1) A person is guilty of terroristic threatening in the second degree when, ... he or she intentionally:
> (a) With respect to a school function, threatens to commit any act likely to result in death or serious physical injury to any student group, teacher, volunteer worker, or employee of a public or private elementary or secondary school, vocational school, or institution of postsecondary education, or to any other person reasonably expected to lawfully be on school property or at a school-sanctioned activity, if the threat is related to their employment by a school, or work or attendance at school, or a school function.

continued. *Id.* at pp. 115-116. Osborne stated that she would take care of the issue. *Id.* at p. 116.

Adams testified that the bullying continued. He and his wife met with Osborne a third time on October 9, 2017. *Id.* at p. 109. This meeting took place in Osborne's office at the school. No one other than Adams, his wife and Osborne were present. No notes were taken. No audio or video recordings were made. *Id.* at p. 111.

Adams testified that during the meeting, he asked Osborne repeatedly what steps she was going to take to prevent any further bullying of Gage at school. According to Adams, Osborne would not give a direct answer. Instead, each time Adams asked, Osborne told him she could not specifically tell him what steps she was going to take, since it involved other children at the school. *Id.* at pp. 109 – 113. Adams responded that "it's not that difficult to … work out the bullying issue" with seventh graders. *Id.* at p. 114. He also said, "[i]f you let bullies run your school, there's going to be an issue like Sandy Hook. *Id.* at p. 117. At some point, Adams stated "if I have to run through the woods in a ghillie suit, I'm going to protect him." *Id.* at pp. 118 – 119.

Osborne testified that in addition to mentioning Sandy Hook, Adams stated "the next time you all go into lockdown, I will put on a ghillie suit. They won't hear the crack from a mile away. I'm just saying" and "I'm just telling you what I will have to do to protect my son. You can use your imagination." [Deposition of Jana Osborne, Docket No. 32-2, pp.125 -126 and Written Statement of Jana Osborne, Docket No. 32-2].

The meeting lasted about fifteen minutes. [Docket No. 32-5, p. 110]. The Adamses left the school grounds without incident. [Video surveillance footage, Docket No. 44-6].

---

KRS 508.078.

Concerned with what she perceived to be threats of violence, Osborne relayed her conversation with the Adamses to Kimberly Fitch, the Principal. Fitch testified that Osborne told her that Adams said "that he could put on a ghillie suit … and we could hear a crack a mile away and the whole thing about Sandy Hook." [Deposition of Kimberly Fitch, Docket No. 32-6, pp. 33 – 34]. Fitch further testified that Adams' comments were "terrifying things that you don't want to hear as an administrator because you have the responsibility of all the children and staff in your hands" and she was "absolutely" afraid for the children at that point. *Id.* at p. 34.

Either Osborne or Fitch contacted Boyd County Schools Superintendent William Boblett and told him that an upset parent had "made references to Sandy Hook, having a ghillie suit, shooting a weapon, that someone would drop before you heard the crack of the weapon, the firing of the weapon." [Deposition of William Boblett, Docket No. 32-7, pp. 30 – 31]. At the time, Boblett believed that the students and/or the faculty at Boyd County Middle School were under imminent threat of harm. *Id.* at p. 32.

As a security measure, the school was placed on "lock-in" status, during which entry and egress to the school is limited but classes and internal travel by students and staff continues. *Id.*

At some point during the day, Osborne contacted Boyd County Sheriff's Deputy Tim Wechsler, a school resource officer in the Boyd County School District. [Docket No. 32-2, pp. and Deposition of Tim Wechsler, Docket No. 32-12, Depo., p. 15]. She conveyed that Mr. Adams had made threatening statements that concerned her and she described the statements. [Docket No. 21-12, p. 15].  Officer Wechsler then drove to the school to meet with Osborne, Fitch, and Boblett. *Id.* at p. 25.

In a letter to the parents of Boyd County Middle sent home at the end of the school day, Boblett addressed the lock-in:

> The practice of Boyd County Public schools is to place students and staff on lock-in when we have a concern of a potential safety issue outside our buildings and we believe our students to be safest when they are located inside with our trained professionals….we felt this to be a necessary decision for the safety of the students. We did not believe our students to be in immediate danger, but felt these precautions were necessary to assure their safety.

[Docket No. 44-10].

Meanwhile, Wechsler secured a warrant for Adams' arrest on a charge of terroristic threatening in the second degree, in violation of KRS 508.078. [Docket No. 35-3]. Boyd County Sheriff deputies arrested Adams at his home at approximately 3:30 p.m. [Docket No. 32-5, p. 138. A search conducted of his home revealed several firearms and a ghillie suit.

On October 17, 2017, a Boyd County Grand Jury indicted Adams on one count of terroristic threatening in the second degree. [Docket No. 35-4].

In March 2018, a Boyd County Circuit Court jury acquitted Adams of that charge. *Commonwealth of Kentucky v. Michael Adams*, Boyd Circuit Court No. 17-CR-386.

This lawsuit followed. Adams filed suit against the Boyd County Board of Education, Jana Osborne, individually and in her official capacity as Assistant Principal of Boyd County Middle School Kimberly Fitch, individually and in her official capacity as Principal of Boyd County Middle School, and William L. Boblett, Jr., individually and in his official capacity as Superintendent of the Boyd County Board of Education as well as several law enforcement officers. The Complaint asserts causes of action under 42 U.S.C. § 1983 for unlawful detention and malicious prosecution, as well as causes of action under state law for abuse of process and malicious prosecution.

Defendants Boyd County Board of Education, Osborne, Fitch and Boblett seek judgment as a matter of law as to all claims asserted against them, in all capacities.

**II.**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The burden to show that there are no genuine issues of material fact falls on the parties seeking summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This Court will consider the evidence in the light most favorable to the non-moving parties, drawing all justifiable inferences in their favor. *Id.* The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law. *Id.* at 251-52, 106 S.Ct. 2505.

**III.**

Plaintiff's claims under federal law against these Defendants are barred by qualified immunity.

The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It protects government actors performing discretionary functions from liability for civil damages only when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Qualified immunity is an affirmative defense. Once raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013).

The qualified immunity defense may be raised at any stage of the case. When it is raised in a motion for summary judgment, as here, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In other words, the court must view the facts in the light most favorable to the plaintiff. "In qualified immunity cases, this usually means adopting ... the plaintiff's version of the facts." *Id.* at 550 U.S. at 378, 127 S.Ct. 1769.

The Complaint broadly asserts that the Boyd County Board of Education, an Assistant Principal Principal, and the Superintendent should be held liable for reporting safety concerns to law enforcement. In order to determine if qualified immunity exists, the first issue is whether there existed any "clearly established constitutional right" of Plaintiff not to have his words, conduct, and manner communicated to law enforcement. In other words, did Plaintiff have a "clearly established constitutional right" to enter a public school, express his displeasure over his perception of the school's response to claims his child had been bullied, admittedly use or emotionally charged words associated with known school tragedies, raise the "hypothetical" possession of a weapon on campus, and then suggest he would use stealth and self-help to protect his son from harm if he thought it necessary, yet not have this situation reported to a law enforcement officer assigned to the school for the very purpose of maintaining safety in the school? The answer is a resounding no.

Plaintiff admitted, both in his deposition and in court proceedings in the appurtenant criminal matter, that he made the statements which sounded the alarm in the Defendants' minds.

Yet, in arguing against qualified immunity, he makes much of his intent; he claims that he had not intended to convey threats of violence.

Yet, his intent is not the determinative question. The issue is whether he has proven that he has a clearly established, constitutionally protected right to make statements invoking violence, to a school employee, while at the school. He has not. He cannot. Indeed, The Boyd County Board of Education, its employees, and administrators exercised good judgment, in good faith, in this situation and are immune from liability to the federal claims asserted against them.

**IV.**

These Defendants are also immune from the claims asserted against under state law. Although school boards and their employees do not actually have sovereign immunity, as agencies of the state, they enjoy governmental immunity. *James v. Wilson,* 95 S.W.3d 875, 903 (Ky. App. 2002). "Governmental immunity' is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency." *Yanero v. Davis,* 65 S.W.3d 510, 519 (Ky. 2001). State agencies are entitled to governmental immunity in the performance of governmental functions. *Id.*

Moreover, individuals who are sued in their official capacities as government employees are also entitled to governmental immunity. *Autry v. Western Kentucky Univ.,* 219 S.W.3d 713, 717 (Ky. 2007). Therefore, in addition to the Boyd County Board of Education, Osborne, Fitch and Boblett, in their official capacities, are protected from liability by governmental immunity.

Adams also sued Osborne, Fitch and Boblett in their individual capacities. In this context, immunity is not absolute. Qualified official immunity affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. *Id.* Further, qualified official immunity applies to the negligent performance by a public officer or employee

of discretionary acts or functions, but not to the performance of ministerial acts. *Id.*

Without descending further into the morass of caselaw, the Court notes that Plaintiff's argument with respect to these Defendants' immunity in their individual capacities is, at best, half-hearted. Making no mention whatsoever of Fitch and Boblett, he contends that Osborne acted outside of her discretionary duties. Yet, he offers no supporting explanation beyond his conclusory assertion. This is not enough to carry his evidentiary burden. Plaintiff's half-hearted attempt at addressing this claim, lacking both argumentation and evidentiary support, patently fails.

## V.

Immunity aside, Plaintiff cannot establish the essential elements of the claims he asserted against these Defendants.

## A.

Plaintiff's claims of unlawful detention fail as a matter of law.

Unlawful detention, or false imprisonment is "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001). The restraint must have been "wrongful, improper, or without a claim or reasonable justification, authority or privilege." *Id.*

Plaintiff makes no argument in opposition to the dispositive motions as to his claim for unlawful detention.

A plaintiff is deemed to have abandoned a claim where he fails to address it in response to a motion for summary judgment. *See Hicks v. Concorde Career Coll.,* 449 Fed.Appx. 484, 487 (6th Cir.2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment);

*v. City of Dublin,* 178 Fed.Appx. 522, 524–25 (6th Cir.2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.,* 65 Fed.Appx. 19, 24–25 (6th Cir.2003).

Moreover, there is no evidence that these Defendants *detained* Plaintiff in any manner. He came to the school of his own free will. He left the school in the same fashion.

Therefore, summary judgment as to this claim is appropriate.

### B.

Nor can Plaintiff credibly maintain that these Defendants are liable for abuse of process.

An abuse of process is "the irregular or wrongful employment of a judicial proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998) (quoting *Stoll Oil Refining Company v. Pierce*, Ky., 337 S.W.2d 263 (1960) ). The essential elements of the claim are: (1) an ulterior purpose and (2) a willful act in the use of the judicial process not proper in the regular conduct of the proceeding. *Id.*

Again, Plaintiff offers no cogent argument in support of his claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted) ). That is precisely the circumstance here. It is undisputed that these Defendants were not privy to the judicial process. Therefore, they did not, *could* not, abuse it. Any argument otherwise, is without merit.

### C.

Plaintiff's claims for malicious prosecution are similarly untenable.

A claim for malicious prosecution under § 1983 requires: (1) that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute" the plaintiff; (2) a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and (4) the criminal proceedings were resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th. Cir. 2010).

The elements of malicious prosecution are slightly different for the state law claim, which requires a plaintiff to prove that 1) the defendant initiated, continued, or procured a criminal . . . proceeding. . . against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . . ; 4) the proceeding . . . terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding. *Hartman v. Thompson*, 931 F.3d 471, 485 (6th Cir. 2019) (internal citations omitted).

Plaintiff's claims, both federal and state, fail in the first instance. These Defendants did not initiate a criminal proceeding. At most, they provided information to law enforcement. Further, there is no evidence that they acted with malice.

In support of his claims against these Defendants, Plaintiff argues that his acquittal is somehow tantamount to malicious prosecution. This is simply not the law.

**VI.**

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1) Defendants Boyd County Board of Education, Kimberly Fitch, individually and in her official capacity as Principal of Boyd County Middle School, and William L. Boblett, Jr., individually and in his official capacity as Superintendent of the Boyd

County Board of Education's Motion for Summary Judgment [Docket No. 32] be **SUSTAINED** and

2) Defendant Jana Osborne, individually and in her official capacity as Assistant Principal of Boyd County Middle School's Motion for Summary Judgment [Docket No. 34] be **SUSTAINED.**

This is an interlocutory and non-appealable Order.

This 26th day of March 2020.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge