UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO: 0:18-cv-00102-HRW

MICHAEL ADAMS,                                                                                    PLAINTIFF,

v.                        MEMORANDUM OPINION AND ORDER

TIM WECHSLER, *Individually*
*and in his Official Capacity*
*as Deputy, Boyd County Sheriff's Department*;
SHERIFF BOBBY JACK WOODS, *Individually*
*and in his Official Capacity*
*as Sheriff, Boyd County Sheriff's Department;*
JUDGE EXECUTIVE STEVE TOWLER, *in his Official Capacity*
*as Boyd County Judge Executive*
and
BOYD COUNTY FISCAL COURT,                                                         DEFENDANTS.

This matter is before the Court upon Defendants Bobby Jack Woods, individually and in his official capacity as Boyd County Sheriff; Judge Executive Steve Towler, in his official capacity as Boyd County Judge Executive; the Boyd County Fiscal Court; and, Tim Wechsler, individually and in his official capacity as a Boyd County Deputy Sheriff's Motion for Summary Judgment [Docket No. 35]. The matter has been fully briefed by the parties.   For the reasons stated herein, the Court finds that these Defendants are entitled to judgment as a matter of law.

**I.**

This case arises from the arrest, trial and acquittal of Plaintiff Michael Adams for

1

terroristic threatening in the second degree in violation of KRS 508.078.[1]

Adams' son, Gage, was in the seventh grade at Boyd County Middle School during the 2017-2018 school year. [Deposition of Michael Adams, Docket No. 32-5, pp. 8, 12]. Adams testified that very shortly after school began, Gage began experiencing bullying at school. *Id.* at pp. 98-99.

Sometime in late August 2017, Adams' wife, Rebecca, spoke with the Assistant Principal, Jana Osborne, briefly in the school parking lot, about the bullying. *Id.* at pp. 102-104.

Both Mr. and Mrs. Adams spoke to Osborne again in this regard in September 2017. *Id.* at p. 104. This conversation took place in a hallway at the school. *Id.* Adams testified that during this conversation, he stated that he would send Gage to school with a switchblade if the bullying continued. *Id.* at pp. 115-116. Osborne stated that she would take care of the issue. *Id.* at p. 116.

Adams testified that the bullying continued. He and his wife met with Osborne a third time on October 9, 2017. *Id.* at p. 109. This meeting took place in Osborne's office at the school. No one other than Adams, his wife and Osborne were present. No notes were taken. No audio or video recordings were made. *Id.* at p. 111.

---

1 The statute provides:

> (1) A person is guilty of terroristic threatening in the second degree when, ... he or she intentionally:
> (a) With respect to a school function, threatens to commit any act likely to result in death or serious physical injury to any student group, teacher, volunteer worker, or employee of a public or private elementary or secondary school, vocational school, or institution of postsecondary education, or to any other person reasonably expected to lawfully be on school property or at a school-sanctioned activity, if the threat is related to their employment by a school, or work or attendance at school, or a school function.

2

Adams testified that during the meeting, he asked Osborne repeatedly what steps she was going to take to prevent any further bullying of Gage at school. According to Adams, Osborne would not give a direct answer. Instead, each time Adams asked, Osborne told him she could not specifically tell him what steps she was going to take, since it involved other children at the school. *Id.* at pp. 109 – 113. Adams responded that "it's not that difficult to … work out the bullying issue" with seventh graders. *Id.* at p. 114. He also said, "[i]f you let bullies run your school, there's going to be an issue like Sandy Hook. *Id.* at p. 117. At some point, Adams stated "if I have to run through the woods in a ghillie suit, I'm going to protect him." *Id.* at pp. 118 – 119.

Osborne testified that in addition to mentioning Sandy Hook, Adams stated "the next time you all go into lockdown, I will put on a ghillie suit. They won't hear the crack from a mile away. I'm just saying" and "I'm just telling you what I will have to do to protect my son. You can use your imagination." [Deposition of Jana Osborne, Docket No. 32-2, pp.125 -126].

The meeting lasted about fifteen minutes. [Docket No. 32-5, p. 110]. The Adamses left the school grounds without incident. [Video surveillance footage, Docket No. 44-6].

Concerned by Mr. Adams' statements, Osborne relayed her conversation with the Adamses to Kimberly Fitch, the Principal. Fitch testified that Osborne told her that Adams said "that he could put on a ghillie suit … and we could hear a crack a mile away and the whole thing about Sandy Hook." [Deposition of Kimberly Fitch, Docket No. 32-6, pp. 33 – 34]. Fitch further testified that Adams' comments were "terrifying things that you don't want to hear as an

---

KRS 508.078.

3

administrator because you have the responsibility of all the children and staff in your hands" and she was "absolutely" afraid for the children at that point. *Id.* at p. 34.

Either Osborne or Fitch contacted Boyd County Schools Superintendent William Boblett and told him that an upset parent had "made references to Sandy Hook, having a ghillie suit, shooting a weapon, that someone would drop before you heard the crack of the weapon, the firing of the weapon." [Deposition of William Boblett, Docket No. 32-7, pp. 30 – 31]. At the time, Boblett believed that the students and/or the faculty at Boyd County Middle School were under imminent threat of harm. *Id.* at p. 32.

As a security measure, the school was placed on "lock-in" status, during which entry and egress to the school is limited but classes and internal travel by students and staff continues. *Id.*

At some point during the day, Osborne contacted Boyd County Sheriff's Deputy Tim Wechsler, a school resource officer in the Boyd County School District. [Deposition of Tim Wechsler, Docket No. 39, p. 15]. She conveyed that Mr. Adams had made threatening statements that concerned her and she described the statements. Officer Wechsler then drove to the school to meet with Osborne, Fitch, and Boblett. *Id.* at p. 25.

During the meeting, Osborne typed a statement, which she gave to Wechsler. *Id.* at pp. 25 – 26.   The statement, which is in the record at Docket 35-1, reiterates what Adams said to Osborne.

Deputy Wechsler then contacted Sheriff Bobby Jack Woods and told him what Adams said, as Osborne had described it to him. *Id.*   Sheriff Woods asked Deputy Wechsler to bring him Osborne's statement, which Wechsler did. *Id.*

After reviewing Osborne's statement, Sheriff Woods advised Deputy Wechsler to talk with the Commonwealth Attorney. *Id.* Deputy Wechsler went to the Boyd County Commonwealth Attorney's Office and reported the information he had received to Assistant Boyd County Commonwealth Attorney Gary Conn and gave him a copy of Osborne's statement. *Id.*

Conn felt there was probable cause to arrest Adams on a charge of terroristic threatening in the second degree, in violation of KRS 508.078. [Affidavit of Gary Conn, Docket No. 35-2, ¶ 4]. At Conn's direction, Wechsler secured a warrant for Adams' arrest on a charge of terroristic threatening in the second degree, in violation of KRS 508.078. *Id.*

Boyd County Sheriff deputies arrested Adams at his home at approximately 3:30 p.m. [Docket No. 32-5, p. 138]. A search conducted of his home revealed several firearms and a ghillie suit.

On October 17, 2017, a Boyd County Grand Jury indicted Adams on one count of terroristic threatening in the second degree. [Docket No. 35-4].

In March 2018, a Boyd County Circuit Court jury acquitted Adams of that charge. *Commonwealth of Kentucky v. Michael Adams*, Boyd Circuit Court No. 17-CR-386.

This lawsuit followed. Adams filed suit against the Boyd County Board of Education, Jana Osborne, individually and in her official capacity as Assistant Principal of Boyd County Middle School Kimberly Fitch, individually and in her official capacity as Principal of Boyd County Middle School, and William L. Boblett, Jr., individually and in his official capacity as Superintendent of the Boyd County Board of Education, Bobby Jack Woods, individually and in his official capacity as Boyd County Sheriff; Judge Executive Steve Towler, in his official capacity

5

as Boyd County Judge Executive; the Boyd County Fiscal Court; and, Tim Wechsler, individually and in his official capacity as a Boyd County Deputy Sheriff.

The Complaint asserts causes of action under 42 U.S.C. § 1983 for unlawful detention and malicious prosecution, as well as causes of action under state law for abuse of process and malicious prosecution.

The undersigned sustained Defendants Boyd County Board of Education, Osborne, Fitch and Boblett's dispositive motion.

The remaining Defendants, Bobby Jack Woods, individually and in his official capacity as Boyd County Sheriff; Judge Executive Steve Towler, in his official capacity as Boyd County Judge Executive; the Boyd County Fiscal Court; and, Tim Wechsler, individually and in his official capacity as a Boyd County Deputy Sheriff seek judgment as a matter of law as to all claims alleged against them herein.

## II.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see, e.g.*, *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).

The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the non-moving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the non-moving party. *Anderson*

6

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the non-moving party must set forth specific facts, supported by record evidence, showing a genuine issue for trial exists. Fed. R. Civ. P. 56(e).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

The question, then, is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that [the moving] party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252; *see, e.g.*, *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (citing *Anderson,* 477 U.S. at 249) (noting the function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

## III.

Sheriff Bobby Woods, Judge Executive Steve Towler and the Boyd County Fiscal Court, are entitled to judgment as a matter of law. The Complaint makes only passing references to them, and, in his response to the dispositive motion, Plaintiff makes no argument with regard to these Defendants. Therefore, they are entitled to summary judgment.

## IV.

Plaintiff alleges claims against Wechsler in his official capacity as Boyd County Deputy Sheriff. An official capacity action filed against a public employee is the equivalent of a suit

7

against the government entity which the employee represents. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).   The claims against Wechsler in his official capacity are nothing more than a suit against Boyd County.   *See, e.g., Leach v. Shelby Cnty.,* 891 F.2d 1241, 1245–46 (6th Cir.1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself."); *Petty v. Cnty. of Franklin,* 478 F.3d 341, 349 (6th Cir.2007) ("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself.") (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.")).

Plaintiff cannot hold Boyd County liable for employees' actions under § 1983 based on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, liability must rest on violations that are attributable to the county itself. Such violations may arise from official policies, widespread customs or practices, or the failure to train employees adequately. *See Id.* at 694, 98 S.Ct. 2018. *See also Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006).

Plaintiff has failed to allege, must less identify, any unlawful practice or policy, nor a deficiency in training with respect to making an arrest or seeking a warrant for the same. Accordingly, summary judgment will be granted in favor of Wechsler with respect to the § 1983 claims against the defendant in his official capacity.

## V.

Plaintiff also alleges claims against Wechsler in his individual capacity. Wechsler argues that he is entitled to qualified immunity as to these claims.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is a legal question for the Court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway*, 501 U.S. 510, 516 (1994)). When resolving an officer's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown establishes the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the incident. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)). Courts may examine the two prongs in any order, depending on the facts and circumstances of each case. *Id.* at 567-68.

Once the qualified immunity defense is raised, the plaintiff bears the burden of demonstrating both that the challenged conduct violates a constitutional or statutory right and that the right was so clearly established at the time that " 'every reasonable official would have understood that what he [was] doing violate[d] that right.' " *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the

9

plainly incompetent or those who knowingly violate the law.' " *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

## A.

In order to establish unlawful detention, Plaintiff must prove that the Defendant Wechsler lacked probable cause to support his arrest. *See, Hartman v. Moore,* 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (plaintiff must plead and prove absence of probable cause as element of retaliatory prosecution claim,); *Crockett v. Cumberland Coll.,* 316 F.3d 571, 580 (6th Cir.2003) (claim for wrongful arrest turns on whether officer had probable cause under the Fourth Amendment); *Barnes v. Wright,* 449 F.3d 709 (6th Cir.2006) (plaintiff alleging malicious prosecution must show that no probable cause existed to justify arrest and prosecution).

A police officer is subject to liability "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized" *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The *Malley* Court further noted that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Id* at 344–45, 106 S.Ct. 1092 (internal citations omitted).

Probable cause to justify an arrest exists where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Probable cause requires only the probability of criminal activity, not some type of prima facie showing.

*City of Kent,* 867 F.2d 259, 262 (6th Cir.1988).

The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time...." *Crockett, supra* at 580.

Wechsler arrested Adams for terroristic threatening in the second degree. Did he have probable cause?

Terroristic threatening in the second degree is defined by KRS 508.078, which provides: "A person is guilty of terroristic threatening in the second degree when … he or she intentionally: (a) … threatens to commit any act likely to result in death or serious physical injury to … any student group, teacher, volunteer worker, or employee of a public or private elementary or secondary school … if the threat is related to their … attendance at school."

Based upon the statement of Osborne, Wechsler had cause for concern. He testified that he believed the school was under imminent threat of harm. [Docket No. 39, p. 23]. Wechsler then followed the chain of command, seeking, first, the recommendation of his direct superior, Sherriff Woods, who, in turn, advised that Wechsler seek the counsel of Assistant Boyd County Commonwealth Attorney Gary Conn.   In his Affidavit, Conn stated that he felt probable caused existed to arrest Adams for terroristic threatening in the second degree. Wechsler, having Conn's imprimatur, proceeded to secure a warrant.

There is nothing in this chain of events which suggests that anything untoward occurred. Wechsler did not pursue a warrant as some sort of renegade mission against Adams.   To the contrary, Wechsler acted "by the book."    He sought and received the advice of both Sheriff Woods and Assistant Commonwealth Attorney Conn.

The Court notes that, in § 1983 actions, such as this, absent evidence of malice or blatant impropriety, officers may rely upon a judicially secured warrant as satisfactory evidence of probable cause. *See generally, Yancey v. Carroll County,* 876 F.2d 1238 (6th Cir.). As such, Weschler is entitled to qualified immunity.

Plaintiff maintains that the contents of Osborne's statements are false. In doing so, he contradicts his own deposition testimony, as well as his statements under oath during the appurtenant criminal proceedings, wherein he admitted he made the statements which sounded the alarm.

Plaintiff also contends that Weschler failed to properly investigate the incident before obtaining a warrant, and, as such, lacked probably cause for the arrest. However, the record tells a different story. As discussed *supra*, Wechsler received information which he believed may be actionable, then sought the advice of not one, but two superiors, who agreed with his assessment and directed him to get a warrant. There is no evidence that Wechsler made false statements to Woods or Conn or withheld pertinent information from them. There are no facts to suggest Wechsler acted other than a reasonable police office would act in the same circumstances.

Given the existence of probable cause, Plaintiff's claim of unlawful detention fails as matter of law.

**B.**

Plaintiff also alleges malicious prosecution. An individual may be liable under § 1983 for malicious prosecution if he wrongfully institutes legal process against another individual. *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir.2010). In order to maintain a malicious prosecution

claim, a plaintiff must demonstrate that (1) the defendant participated in the decision to prosecute the plaintiff, (2) probable cause did not support the institution of legal process, (3) the plaintiff suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure as a result of the institution of proceedings, and (4) the legal proceedings resulted in the plaintiff's favor. *Id.* at 308–09. Ironically, a plaintiff need not show that the person who instituted proceedings acted maliciously to make out a § 1983 malicious prosecution claim. *Id.* at 309–10.

Plaintiff fails to satisfy at least two of the elements of a § 1983 malicious prosecution claim. As we explained, probable cause supported the institution of proceedings against Plaintiff. Additionally, Wechsler did not participate in the institution of criminal proceedings against Plaintiff. As the 6th Circuit explained in *Sykes,* "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Id.* at 314. Wechsler did no more than that.

The failure of Plaintiff's federal claim of malicious prosecution defeats his analogous state law claim. In Kentucky, a plaintiff alleging malicious prosecution must prove "(1) the institution of judicial proceedings, (2) by or at the insistence of the Defendant, (3) the resulting termination of such proceedings in the claimant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause in such proceedings, and (6) injury or damages suffered by the plaintiff as a result thereof." *Williams v. Cline,* 2012 WL 1365964, at *4 (Ky.Ct.App. Apr. 20, 2012). Wechsler had probable cause to charge Adamas with terroristic threatening in the second degree; this fact alone defeats his claim. Additionally, Plaintiff fails to create a genuine issue of material fact as to whether Defendant acted with malice in obtaining a

warrant.

## C.

Plaintiff also alleges abuse of process. In Kentucky, an abuse of process occurs when an individual "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed." *Williams,* 2012 WL 1365964, at *3 (internal quotation and citation omitted). The elements of a Kentucky abuse of process claim are "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart,* 962 S.W.2d 392, 394 (Ky.1998). A successful claim requires proof of "[s]ome definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process." *Id.* A claim fails if "the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Id.* at 394–95.

Plaintiff fails to create a genuine dispute of material fact regarding Wechsler's motive in seeking a criminal charge against him. Although Plaintiff suggests an improper motive, the facts do not support it. In his deposition, Wechsler was asked, point blank, if he had any animosity toward Adams. Wechsler testified "No." [Docket No. 39, p. 18]. Plaintiff has nothing with which to rebut Wechsler's testimony. Rather, he merely attempts to raise a specter of malice or other illegitimate motive. Innuendo is not enough to withstand summary judgment. There is no evidence to support the contention that Wechsler investigated with an improper motive. Therefore, Plaintiff's abuse of process claim fails.

**VI.**

Accordingly, **IT IS HEREBY ORDERED** that Defendants Bobby Jack Woods, individually and in his official capacity as Boyd County Sheriff; Judge Executive Steve Towler, in his official capacity as Boyd County Judge Executive; the Boyd County Fiscal Court; and, Tim Wechsler, individually and in his official capacity as a Boyd County Deputy Sheriff's Motion for Summary Judgment [Docket No. 35] be **SUSTAINED**.

This 6th day of July, 2020.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge